## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BLAIR ARTIS and JONATHAN FISHER, on behalf of themselves and all others similarly situated, | **Civil Action No.:** |
| Plaintiffs, | |
| vs. | **COMPLAINT – CLASS ACTION** |
| GARDAWORLD CASH SERVICES, INC. d/b/a GARDAWORLD CASH | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs Blair Artis and Jonathan Fisher, individually and on behalf of the Class defined below of similarly situated persons, allege the following against GardaWorld Cash Services, Inc. d/b/a/ GardaWorld Cash. ("GardaWorld" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### <u>NATURE OF THE ACTION</u>

1.      It is both unfair and unlawful for companies like GardaWorld to punish employees who use nicotine products or exercise their rights not to be vaccinated with significantly higher health insurance premiums through "nicotine surcharges" and "vaccine surcharges." This lawsuit challenges those practices. Nicotine and vaccine surcharges violate the Employee Retirement Income Security Act ("ERISA") and its anti-discrimination provisions by singling out certain employees and forcing them to pay more each month for health insurance.

2.      ERISA includes robust anti-discrimination provisions that safeguard participants in employer-sponsored health plans. These provisions specifically prohibit employers from charging extra premiums or fees based on a health status factor like tobacco use or vaccination status. While

there is a narrow exception for "wellness programs," those programs must comply with specific criteria. First, the wellness program must be designed to promote health and not simply generate revenue for the plan. Second, the program must offer a "reasonable alternative standard" to participants who find it medically difficult or unreasonably challenging to meet the initial health standard (e.g., not using nicotine or getting the Covid vaccine). This alternative standard could include participation in a smoking cessation program or training in disease non-proliferation. Importantly, by successfully completing the alternative standard, a participant can earn the program's "full reward," which typically translates to avoiding the entire nicotine or vaccine surcharge for the plan year. Finally, the company sponsoring the wellness program has a legal obligation to clearly communicate the existence of this reasonable alternative standard in "all plan materials."

3.     However, the GardaWorld Cash Services, Inc. Health and Welfare Benefit Plan (the "Plan") does not offer the requisite reasonable alternative standards and, even if it did, there is no communication of their existence in "all plan materials." Thus, the Plan fails to satisfy the exception under the applicable regulations and violates ERISA's anti-discrimination requirements and collection of additional monies in connection with nicotine use or vaccine status and continues to be unlawful.

4.     Plaintiffs Blair Artis and Jonathan Fisher were and continue to be employees of GardaWorld; they have been for the last several years. Ms. Artis and Mr. Fisher work as armed guards in North Carolina and was required to pay the illegal surcharge to maintain health insurance coverage under the Plan. They bring this lawsuit individually and on behalf of all similarly situated plan participants and beneficiaries, seeking to recover these unlawfully charged additional premiums and for plan-wide equitable relief to prevent GardaWorld from continuing to profit from its violations under 29 U.S.C. § 1109.

2

## PARTIES

5.  Plaintiff Blair Artis is, and at all times mentioned herein was, an individual citizen of the State of North Carolina residing in the County of Mecklenburg. At all times relevant herein, Ms. Artis is an employee of GardaWorld who paid the nicotine and vaccine surcharges in the form of additional premiums associated with the health insurance offered through her employer during the applicable limitations period.

6.  Plaintiff Jonathan Fisher is, and at all times mentioned herein was, an individual citizen of the State of North Carolina residing in the County of Mecklenburg. At all times relevant herein, Mr. Fisher is an employee of GardaWorld who paid the nicotine surcharge in the form of additional premiums associated with the health insurance offered through his employer during the applicable limitations period

7.  Plaintiffs Artis and Fischer are participants in the Plan pursuant to 29 U.S.C. § 1102(7).

8.  Defendant GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash is incorporated in Delaware with its principal place of business at 2000 NW Corporate Blvd, Boca Raton, Florida.

9.  At all times relevant to this lawsuit, Defendant operated one or more health and welfare plans which were available for GardaWorld employees. The GardaWorld Cash Services, Inc. Health and Welfare Benefit Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

10.  The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

11.     This Court has personal jurisdiction over Defendant because the claims of Plaintiffs and all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiffs within the State of North Carolina, and Defendant has purposefully availed itself of the privilege of conducting business within the State of North Carolina.

12.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which the statutory breach took place, and Plaintiffs reside and receive benefits under the plan in this District, and is a District in which a defendant may be found.

**FACTUAL BACKGROUND**

**I.     GARDAWORLD'S NICOTINE AND VACCINE SURCHARGES VIOLATE ERISA'S ANTI-DISCRIMINATION RULE**

13.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use and vaccination status. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1).

14.     Defendant's nicotine and vaccine surcharges violate this provision. Plaintiffs and all others similarly situated were required to pay an additional premium or contribution per year based on a 'heath status-related factor" — their use of nicotine products and/or vaccine status. Payment of the nicotine and/or vaccine surcharges were required for Plaintiffs and all others similarly situated to remain insured under Defendant's Plan.

15.     Specifically, at all times relevant herein, any employee who used nicotine products was required to declare themselves to be nicotine users as part of the enrollment process.  Persons declared to be nicotine users were charged an additional $100 per month. Similarly, any employee

who was not fully vaccinated was required to declare themselves as such as part of the enrollment process. Persons who did not submit proof of full vaccination were charged an additional roughly $90 per month.

16.     During this period, GardaWorld controlled the tobacco surcharge, including which participants were charged and by withholding the tobacco surcharge from a participant's paycheck and placing it in the Plan's trust account. During this period, GardaWorld controlled the vaccine surcharge, including which participants were charged and by withholding the vaccine surcharge from a participant's paycheck and placing it in the Plan's trust account. These amounts, for Ms. Blair, totaled $92.30 each, per pay period ($46.15 for the nicotine surcharge and $46.15 for the vaccine surcharge). Mr. Fisher is being charged the same amounts.

17.     At all times relevant herein, Defendants have maintained sole control of the nicotine and/or vaccine surcharge programs, including by determining which plan participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharges, and determining which employees are reimbursed for the surcharges.

18.     The Plan offered by Defendants both requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any nicotine use and/or vaccine status, and fails to meet the safe harbor exception.

## II.     GARDAWORLD CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS

19.     GardaWorld failed to provide a wellness program in the Health Plan for nicotine users and for unvaccinated participants.

20.     ERISA offers a limited exception to its general rules by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B). This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One

way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, smoking cessation programs or infection control training. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

21.     A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include. To qualify under ERISA, there are three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the full reward — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "in all plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver. 29 C.F.R. § 2590.702(f)(4).

22.     GardaWorld's nicotine and vaccine surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable and alternative standard. As a result, it cannot meet the elements of this affirmative defense.

23.     During at least one year of the applicable limitations period, specifically 2022, there were no wellness programs offered by the Plan to allow tobacco users or unvaccinated individuals a way to avoid these surcharges. During this period, and pursuant to GardaWorld's medical and health plan rules, employees who used any nicotine products were required to declare themselves (and their dependents) as users in a Tobacco Affidavit. Similarly, employees in the Plan had to submit proof of full vaccination to avoid the monthly surcharge. These individuals were charged additional amounts per participant, per pay period to maintain coverage under the Plan. Payment

of these surcharges was required for individuals like Plaintiffs to remain covered under the GardaWorld Health Plan. GardaWorld failed to offer a smoking cessation program or an infectious disease training program for smokers and unvaccinated participants.

24.     GardaWorld, during the applicable limitations period, maintained exclusive control over the nicotine and vaccine surcharges, including determinations as to which participants were and continue to be required to pay the surcharges. GardaWorld withholds the amount of these surcharges from participants' paychecks to collect these surcharges and contributes these amounts to a trust. GardaWorld has a responsibility to make sure that the trust remains adequately funded to ensure continued coverage for its employees' health insurance. In charging and collecting these unlawful surcharges, GardaWorld has reduced the amount that it has to contribute to the trust, which has allowed it to realize monies it would not have otherwise realized if it had not imposed these surcharges.

25.     Additionally, GardaWorld did not provide a wellness program that meets the safe harbor requirements because, when it offered a program for nicotine users, it did not offer a consistent reasonable alternative for individuals who could not complete the program to earn the reward. GardaWorld failed to offer any type of safe harbor for the unvaccinated. According to 29 C.F.R. § 2590.702(f)(2)(iv)(A)(1)-(2), a reasonable alternative must be available to all individuals who do not meet the initial standard to ensure the program is designed to improve health and not simply reduce benefits based on health status (78 Fed. Reg. 33158 at 33160). GardaWorld failed to offer such alternatives for those who did not participate in the smoking cessation program and failed to offer any type of reasonable alternative for the unvaccinated.

26.     GardaWorld also failed to provide a wellness program for unvaccinated individuals. Throughout the limitations period, GardaWorld did not offer a reasonable alternative standard for unvaccinated individuals to avoid the vaccine surcharge. The only way to avoid this surcharge was to get vaccinated and submit proof of vaccination. Even if participants did get vaccinated, GardaWorld did not offer a program that provided a means of avoiding the surcharge

altogether, which is required under the regulations. *See* 78 FR 33158, 33161 ("For individuals who do not attain or maintain the specific health outcome, compliance with an educational program or an activity may be offered as an alternative to achieve the same reward."). A GardaWorld employee who vaccinated part way through the year would not be eligible to avoid the surcharges he or she had already paid. They may be able to avoid those surcharges on a go-forward basis, but, upon information and belief, would not be eligible to recover those surcharges already paid.

27. Since the Plan does not allow participants to completely avoid the nicotine or vaccine surcharges through a retroactive reimbursement, GardaWorld's wellness programs fail to provide reasonable alternative standards and fail to comply with the requirement to make available the "full reward" to participants. On these bases, the Plan violates ERISA's anti-discrimination provisions.

### III.    GARDAWORLD FAILED TO NOTIFY PARTICIPANTS OF A REASONABLE ALTERNATIVE STANDARDS

28. To qualify as a compliant wellness program under the regulations, employers must provide notice of the availability of a reasonable alternative standard. The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); *see also* 42 U.S.C.S. § 300gg-4(j)(3)(E). The regulations make clear that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents (which must be provided upon request), if compliance with

8

the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." 78 FR 33158, 33166 n. 24.

29.     A benefits enrollment guidebook from 2024 (the "Guidebook") contains reminders to employees to "Complete the Tobacco Affidavit . . . annually to declare tobacco use for you and your dependents. The maximum monthly tobacco surcharge is $100 for families."[1] The Guidebook further states that "[t]o eliminate this surcharge, you must complete a tobacco cessation journey program through the Aetna website and then notify the GardaWorld Cash Benefits Department of your completion." *Id.* at 11. Similarly, the Guidebook states that "to avoid a $100 monthly surcharge," participants must "submit proof of full vaccination." *Id.*

30.     The Guidebook states that if the nicotine use and vaccine affidavits are "not completed by December 15, 2023, you will automatically be subject to the monthly $100 Tobacco Use and $100 monthly COVID Vaccination surcharges. ***There will be no refunds of any surcharges that have been assessed***." *Id.* at 18 (emphasis added).

31.     The Guidebook does not mention an alternative standard to avoid these surcharges, and neither the plan document nor the summary plan descriptions during the applicable limitations period contain any reference to a reasonable alternative standard. While there appears to be an alternative means to avoid the nicotine surcharge *prospectively*, there is no mention of a reasonable alternative standard and there is no mention of an avenue by which participants like Plaintiffs could obtain the "full reward" for the plan year. Accordingly, the nicotine surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

32.     For the vaccine surcharge, there is no mention whatsoever of an alternative standard to avoid the vaccine surcharge. There is no mention in the Guidebook or plan documents of a

---

[1] GardaWorld Cash – U.S., *Benefits Enrollment Guidebook 2024* at 5, available at: https://mybenefits.wageworks.com/media/docs/CXWW/106223/Garda%20Benefits%20Enrollm ent%20Guidebook%202024%20v11.pdf (last accessed August 12, 2024).

reasonable alternative standard to avoid this surcharge. Like the nicotine surcharge, there also appears to be no avenue for participants to avoid the surcharge and obtain the "full reward" for the plan year. Accordingly, GardaWorld failed to provide a wellness program or reasonable alternative standard with respect to the vaccine surcharge and fails to comply with the regulatory requirements regarding non-discrimination under ERISA § 702.

33. GardaWorld, by failing to comply with its obligations to provide and notify participants of the availability of reasonable alternative standards by which plan participants can avoid the nicotine and vaccine surcharges and receive the full award, has violated ERISA's anti-discrimination provisions.

## CLASS DEFINITION AND ALLEGATIONS

34. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

35. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nicotine Surcharge Class** (the "**Nicotine Class**")
> All individuals residing in the U.S. who, during the applicable statute of limitations, paid a nicotine surcharge in connection with their participation in a health or welfare plan offered by GardaWorld.

> **Vaccine Surcharge Class** (the "**Vaccine Class**")
> All individuals residing in the U.S. who, during the applicable statute of limitations, paid a vaccine surcharge in connection with their participation in a health or welfare plan offered by GardaWorld.

36. Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

37. Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

10

38.     The proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

39.     **Numerosity**. This action is appropriately suited for a class action. The members of the Classes are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Classes contain hundreds of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

40.     **Commonality**. This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

    a. Whether GardaWorld's nicotine surcharge discriminates against participants based on a health status related factor;

    b. Whether GardaWorld's vaccine surcharge discriminates against participants based on a health status related factor;

    c. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the nicotine surcharge;

    d. Whether GardaWorld offered a reasonable alternative standard by which a participant could avoid paying the vaccine surcharge;

    e. Whether GardaWorld notified participants in all plan materials of the avenues by which participants could avoid the nicotine and/or vaccine surcharges;

    f. Whether GardaWorld notified participants in all plan materials of the reasonable alternative standards by which participants could avoid the nicotine and/or vaccine surcharges for the entire plan year;

    g. Whether GardaWorld's nicotine and/or vaccine surcharges violate ERISA and the applicable regulations.

    h. Whether GardaWorld breached its fiduciary duties by collecting and retaining the nicotine and/or vaccine surcharges;

    i. Whether GardaWorld breached its fiduciary duties by failing to periodically review the terms of its plans to ensure compliance with ERISA and applicable regulations.

41.     **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Classes, because, inter alia, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful nicotine and vaccine surcharges. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are

advancing the same claims and legal theories on behalf of themselves and all members of the Classes. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Classes.

42.     **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs and members of the Classes each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory nicotine and vaccine surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

43.     **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

44.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Classes and other injunctive, declaratory, and equitable relief on grounds generally applicable to the entire Class and Subclass. Unless the Classes are certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Classes

will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Classes will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY NICOTINE SURCHARGE
**(Violation of 29 U.S.C. § 1182)**

45.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

46.     GardaWorld improperly imposes a nicotine surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $100 monthly on participants (and their dependents) who use tobacco, and by charging some participants more than others based on a health status-related factor, GardaWorld is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

47.     29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on tobacco users, without offering a compliant wellness program, GardaWorld discriminates against individuals like Plaintiffs who use nicotine products.

48.     Defendant's imposition of the nicotine surcharge is a violation of ERISA § 702 and the applicable regulations thereunder, including but not limited to 29 C.F.R. § 2590.702. Further, GardaWorld's failure to provide a reasonable alternative standard to the smoking cessation program it offers to participants constitutes a failure by GardaWorld to provide participants with a compliant wellness program. Additionally, participants can avoid only *prospective* surcharges upon completion the smoking cessation program rather than recovering retrospective surcharges

13

already paid. By failing to provide an avenue for participants like Plaintiffs to obtain the "full reward" of the wellness program, GardaWorld failed to provide a compliant wellness program.

49.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

50.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II
## UNLAWFUL IMPOSITION OF DISCRIMINATORY VACCINE SURCHARGE
### (Violation of 29 U.S.C. § 1182)

51.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

52.     GardaWorld improperly imposes a vaccine surcharge on all participants who fail to show they are fully vaccinated in violation of ERISA § 702. By imposing discriminatory premiums of up to $100 monthly on participants (and their dependents) who do not get the Covid-19 vaccination, and by charging some participants more than others based on a health status-related factor GardaWorld is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

53.     29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on unvaccinated participants, without offering a wellness

Case 3:24-cv-00837    Document 1    Filed 09/16/24    Page 14 of 22

program that would enable participants to avoid paying the vaccine surcharge, GardaWorld discriminates against individuals like Plaintiffs who are unvaccinated.

54.     Defendant's imposition of the vaccine surcharge is a violation of ERISA § 702 and the applicable regulations thereunder, including but not limited to 29 C.F.R. § 2590.702.

55.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

56.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

<u>COUNT III</u>
**FAILURE TO NOTIFY OF REASONABLE ALTERNATIVE STANDARD FOR AVOIDING NICOTINE SURCHARGE**
**(Violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)**

57.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

58.     To enroll in the Defendants' Plan, Plaintiffs and all those similarly situated were required to pay a nicotine surcharge in the amount of roughly $1,200 per year, per surcharge.

59.     29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual."

60.     GardaWorld improperly imposes a nicotine surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $100 monthly on participants (and their dependents) who use tobacco, and by charging some participants more than others based on a health status-related factor GardaWorld is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

61.     Applicable regulations provide an exception for wellness programs, provided they comply with the requirements outlined in the regulations. *See* 29 C.F.R. § 2590.702(f). Defendants did not give statutorily required notice of a reasonable alternative standard in that neither the Plan document nor the summary plan description for the Plan during the applicable limitations period detailed the smoking cessation program such that a participant could avoid paying the nicotine surcharge for the entire plan year, in violation of the applicable regulations. 29 C.F.R. § 2590.702(f)(3)(E)(v).

62.     Defendant's failure to notify participants of a reasonable alternative standard prevents it from asserting an affirmative defense on that basis under the statutory safe harbor protection.

63.     Defendant's nicotine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor in assessing premiums or contributions, in violation of 29 U.S.C. §1182(b).

64.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

65.     Plaintiffs and those similarly situated were required to pay an unlawful fee, and Defendants collected that fee in violation of the law.

16

66.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief

**COUNT IV**
**FAILURE TO NOTIFY OF REASONABLE ALTERNATIVE STANDARD FOR AVOIDING VACCINE SURCHARGE**
**(Violation of 29 U.S.C. § 1182, 29 C.F.R. § 2590.702)**

67.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

68.     To enroll in the Defendants' Plan, Plaintiffs and all those similarly situated were required to pay a vaccine surcharge in the amount of $1,200 per year.

69.     29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual."

70.     GardaWorld improperly imposes a vaccine surcharge on all participants who fail to show they are fully vaccinated in violation of ERISA § 702. By imposing discriminatory premiums of up to $100 monthly on participants (and their dependents) who do not get the Covid-19 vaccination, and by charging some participants more than others based on a health status-related factor GardaWorld is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

71.     Applicable regulations provide an exception for wellness programs, provided they comply with the requirements outlined in the regulations. *See* 29 C.F.R. § 2590.702(f). Defendants did not give statutorily required notice of a reasonable alternative standard in that neither the Plan document nor the summary plan description for the Plan during the applicable limitations period detailed a program by which participants like Plaintiffs could avoid paying the vaccine surcharge for the entire plan year, in violation of the applicable regulations. 29 C.F.R. § 2590.702(f)(3)(E)(v).

17

72.     Defendant's failure to notify participants of a reasonable alternative standard prevents it from asserting an affirmative defense under the statutory safe harbor protection.

73.     Defendant's vaccine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor in assessing premiums or contributions, in violation of 29 U.S.C. §1182(b).

74.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

75.     Plaintiffs and those similarly situated were required to pay an unlawful fee, and Defendants collected that fee in violation of the law.

76.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief

<u>**COUNT V**</u>
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA § 404, 29 U.S.C. § 1104)**

77.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

78.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), imposes several fiduciary duties on Plan Administrators, including the duty to act loyally and "solely in the interest of the participants and beneficiaries[,]" the duty to act with "care, skill, prudence, and diligence" — which includes ensuring that benefits paid pursuant to a defined benefit plan conform with ERISA's statutory requirements — and the duty to act "in accordance with the documents and instruments governing

18

the plan ***insofar as such documents and instruments are consistent with*** the provisions of"
subchapters I and III of ERISA. 29 U.S.C. § 1104(a)(1) (emphasis added).

79.     Throughout the applicable limitations period, GardaWorld was the administrator of
the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of
29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control
respecting management of the Plan and the disposition of its assets by holding in trust the funds
collected from the nicotine and/or vaccine surcharges, and had discretionary authority and
discretionary responsibility in the administration of the Plan.

80.     GardaWorld breached its fiduciary duties by assessing and collecting the nicotine
and/or vaccine surcharges in violation of ERISA and the applicable regulations. To that extent,
GardaWorld breached its fiduciary duties by administering a Plan that did not conform with
ERISA's anti-discrimination requirements. GardaWorld acted disloyally by causing Plaintiffs and
members of the Classes to pay nicotine and vaccine surcharges that were unlawful.

81.     GardaWorld retained the amounts of the surcharges thereby reducing the amount it
was required to contribute to the Plan. By retaining the additional money received from the
surcharges, GardaWorld dealt with Plan assets for its own benefit, in violation of ERISA
§ 406(b)(1), 29 U.S.C. § 1106(b)(1). As a result of the imposition of the unlawful and
discriminatory nicotine and/or vaccine surcharges, GardaWorld enriched itself at the expense of
the Plan, resulting in it receiving a windfall.

82.     GardaWorld also breached its fiduciary duties by: failing to act solely in the interest
of participants (and their beneficiaries) in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(A);
administering a Plan that does not conform with ERISA's anti-discrimination provisions, in
violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests
were averse to the interests of the Plan and the interests of its participants (and their beneficiaries),
in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and
diligently to review the terms of the Plan and related plan materials, including the nicotine and/or

Case 3:24-cv-00837   Document 1   Filed 09/16/24   Page 19 of 22

vaccine surcharges and any associated wellness programs, as well as any notices regarding the availability of reasonable alternative standards (or lack thereof). These breaches caused Plaintiffs and the Classes to incur unlawful and discriminatory surcharges.

83. As a direct and proximate result of these fiduciary breaches, members of the Classes lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

84. Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, GardaWorld is liable to make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan or a constructive trust all profits it acquired through its violations alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs Artis and Fisher as Class representatives for the Classes, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory nicotine and vaccine surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing GardaWorld to reimburse all persons who paid the unlawful and discriminatory surcharges within the applicable limitations period;

D. A declaratory judgment that GardaWorld breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following terms of the Plan that violated ERISA's anti-discrimination provisions and for failing to adequately monitor and review the terms of the Plan to ensure they complied with ERISA;

20

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendant charged for the surcharges;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory nicotine and vaccine surcharges;

J. Relief to the Plan from GardaWorld for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the nicotine and/or vaccine surcharges are unlawful; restoration of losses to the Plan and its participants caused by GardaWorld's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring GardaWorld to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Classes pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

21

M. Any other relief the Court determines is just and proper.

Dated: September 16, 2024                    Respectfully submitted,

**SIRI & GLIMSTAD LLP**

By: /s/ Dana Smith

Dana Smith (NC Bar No. 51015)
525 North Tryon Street
Suite 1600, #7433
Charlotte, North Carolina 28202
Tel: (980) 448-1299

David D. DiSabato (Notice of Special
Appearance to be filed)
Oren Faircloth (Notice of Special
Appearance to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: dsmith@sirillp.com
E: ddisabato@sirillp.com
E: ofaircloth@sirillp.com

*Attorneys for Plaintiffs and the Proposed Classes*