| | |
|---|---|
| BLAIR ARTIS and JONATHAN FISHER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GARDAWORLD CASH SERVICES, INC. d/b/a GARDAWORLD CASH<br><br>Defendant. | Civil Action No.: 3:24-cv-00837-KDB-DCK<br><br><br>FIRST AMENDED CLASS ACTION COMPLAINT |

Plaintiffs Blair Artis and Jonathan Fisher, individually and on behalf of the Class defined below of similarly situated persons, allege the following against GardaWorld Cash Services, Inc. d/b/a/ GardaWorld Cash. ("GardaWorld" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.      It is both unfair and unlawful for companies like GardaWorld to impose discriminatory and punitive health insurance surcharges on employees who use nicotine products or choose not to be vaccinated. This lawsuit challenges GardaWorld's practice of charging these unlawful surcharges to participants in the GardaWorld Cash Services, Inc. Health and Welfare Benefit Plan (the "Plan") in violation of the Employee Retirement Income Security Act ("ERISA") and the regulatory requirements that wellness programs must meet to qualify for the safe-harbor exception.

2. Tobacco surcharges and, to a lesser extent vaccine surcharges, have become more prevalent in recent years, but to be lawful, plans must adhere to strict rules set forth by ERISA and applicable regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago. These regulations mandate that employers cannot impose discriminatory fees on participants unless those fees are part of a *bona fide* wellness program. While ERISA allows for health-contingent wellness programs, these programs must "not be a subterfuge for discriminating based on a health factor." To do so, plans must adhere to specific criteria.

3. Generally, there are two types of health-contingent wellness programs: (1) activity-only wellness programs and (2) outcome-based wellness programs. An activity-only wellness program requires a participant to complete an activity related to health to obtain a reward, like getting vaccinated, while an outcome-based wellness program requires a participant to attain or maintain a specific health outcome, like being tobacco free. Critically, for purposes of this action, both types of wellness programs require employers to provide participants with notice of a "reasonable alternative standard." Put simply, a "reasonable alternative standard" is an alternative way for participants to qualify for a reward (or avoid a penalty) if they are unable to meet the initial wellness program standard.

4. In 2013, the Departments finalized the regulations applicable to health-contingent wellness programs (the "DOL Regulations"), effective for plan years on or after January 1, 2014, stating that it is "[t]he intention of the Departments in these final regulations is that, regardless of the type of wellness program, ***every individual participating in the program should be able to receive the full amount of any reward or incentive***, regardless of any health factor." 78 FR 33158, 33160 (emphasis added).

5.      The Plan fails to comply with the DOL regulations and, as a result, is a discriminatory wellness program. With respect to the vaccine surcharge, Defendant failed to provide participants with any of the required notices. Defendant failed to comply with the requirement to include notice of a reasonable alternative standard in both the Plan document and the summary plan description ("SPD"), as mandated by the Departments. Furthermore, Defendant failed to provide specific details about the alternative standard, including contact information for obtaining a reasonable alternative standard and a statement that recommendations from an individual's personal physician would be accommodated, in any materials addressing the alternative standard.

6.      By failing to provide these notices, as required by the DOL Regulations, Defendant ensured that participants, like Plaintiffs, were unaware of the availability of a reasonable alternative standard or that recommendations from their personal physicians would be accommodated. This standalone violation is precisely the type of scenario the regulations seek to prevent — participants being penalized without being aware of alternatives to meet wellness program standards. The Plan's lack of notice deprived Plaintiffs and other similarly situated participants from making informed decisions or requesting an alternative, as participants cannot reasonably be expected to request alternatives they do not know exist. In this way and others, as discussed further below, Defendant failed to offer a compliant wellness program, rendering the program a discriminatory wellness program in clear violation of ERISA and the DOL Regulations.

7.      With respect to the tobacco surcharge, Defendant similarly offered a discriminatory wellness program in violation of ERISA. Not only did Defendant fail to provide the requisite notice under the DOL Regulations, it failed to provide a reasonable alternative standard that allowed "any individual who [did] not meet the initial standard" (i.e., tobacco-users) from obtaining the "full

3

reward." A necessary component of any outcome-based wellness program is that "all similarly situated individuals" must have access to a reasonable alternative standard, such as a smoking cessation program, that provides them with the "full reward." That means, even if an individual takes until the end of the year to complete the wellness program, he or she must be provided with retroactive reimbursements for the months the individual paid the surcharge prior to satisfying the alternative standard. However, the Plan makes clear that "[t]here will be **no refunds of any surcharges that have been assessed**." As a result, Defendants' tobacco surcharge violates the DOL Regulations and ERISA's anti-discrimination provisions.

8.      Plaintiffs Blair Artis and Jonathan Fisher are former and current employees of Defendant, respectively, who paid the vaccine and tobacco surcharges to maintain health insurance coverage under the Plan. Those surcharges imposed an additional financial burden on them and similarly situated employees.

9.      Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for plan-wide equitable relief to prevent GardaWorld from continuing to profit from its violations under 29 U.S.C. § 1109. Defendant, as Plan Administrator, is a fiduciary of the Plan who had, and continues to have, a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. § 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

10.      Plaintiff Blair Artis is, and at all times mentioned herein was, an individual citizen of the State of North Carolina residing in the County of Mecklenburg. Ms. Artis was an employee

of GardaWorld until 2024 who paid the nicotine and vaccine surcharges associated with the health insurance offered through her employer during her employment.

11. Plaintiff Jonathan Fisher is, and at all times mentioned herein was, an individual citizen of the State of North Carolina residing in the County of Mecklenburg. Mr. Fisher is an employee of GardaWorld who paid the nicotine and vaccine surcharges associated with the health insurance offered through his employer during his employment.

12. Plaintiffs Artis and Fischer are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

13. Defendant GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash is incorporated in Delaware with its principal place of business at 2000 NW Corporate Blvd, Boca Raton, Florida.

14. At all times relevant to this lawsuit, Defendant operated one or more health and welfare plans which were available for GardaWorld employees. The Plan GardaWorld Cash Services, Inc. Health and Welfare Benefit Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

16. This Court has personal jurisdiction over Defendant because the claims of Plaintiffs and all others similarly situated arise from the acts and omissions of Defendant with respect to its

5

activities and conduct concerning Plaintiffs within the State of North Carolina, and Defendant has purposefully availed itself of the privilege of conducting business within the State of North Carolina.

17. Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which the statutory breach took place, and Plaintiffs reside and receive benefits under the Plan in this District, and is a District in which a defendant may be found.

## FACTUAL BACKGROUND

### I. STATUTORY AND REGULATORY REQUIREMENTS

18. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including vaccination status or tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1). While the statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B)), these "wellness programs" must adhere to strictly mandated regulatory requirements.

19. The regulations specify "criteria for a program of health promotion or disease prevention offered or provided by a group health plan or group health insurance issuer that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on

6

discrimination based on health status."[1] "That is," the DOL explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). Critically, the DOL clearly states that it is "[t]he intention of the [DOL] . . . that, regardless of the type of wellness program, ***every individual participating in the program should be able to receive the full amount of any reward or incentive, regardless of any health factor.***" *Id.* (emphasis added).

20.     While ERISA permits employers to implement wellness programs that incentivize healthy behavior, the DOL Regulations provide detailed criteria for both activity-only and outcome-based. "[O]nly if all of [] the requirement are satisfied[,]" can a wellness program qualify for the safe harbor exception. *See* 29 C.F.R. § 2590.702(f)(3) and (4).

21.     Activity-only wellness programs must provide notice of a reasonable alternative standard. 29 C.F.R. § 2590.702(f)(3)(v). In addition to providing participants the opportunity to qualify annually, limiting rewards to a defined percentage of coverage costs, and ensuring programs are reasonably designed, plans must disclose, in all materials describing the program, that participants can qualify for or obtain a waiver, along with contact information and a disclosure that participants' personal physician recommendations will be accommodated. *Id.* Plans are not necessarily required to provide alternative standards *before* a participant requests one, but failure to include notice of the availability of these alternative standards, or only mentioning the program and the additional costs without describing the terms of how to avoid the costs, violates the regulatory notice requirements.

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (emphasis added).

22. The DOL Regulations provide an example of a plan offering a walking program that satisfies the requirements because it is reasonably designed to promote health and prevent disease, accommodates individuals with medical conditions by waiving the walking requirement to provide the reward, and, importantly, fully complies with the notice requirement by disclosing the availability of the waiver in all materials describing the program. *Id.*

23. Outcome-based wellness programs have stricter requirements than activity-only programs, as they must offer a reasonable alternative standard *proactively* to any individual who does not meet the initial health-related standard, without requiring the participant to first request it. 29 C.F.R. § 2590.702(f)(4). To ensure reasonable alternative standards are uniformly available to "all similarly situated individuals," and that "outcome-based initial standards are not a subterfuge for discrimination[,]" plans must provide a reasonable alternative standard regardless of whether a participant requests one. 78 FR 33158, 33165. Generally, providing the "full reward" requires ***retroactive reimbursement*** for the period prior to and during the time required to complete the program. The Departments made clear that while plans have "flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative [standard] was satisfied[,]" they must ensure "the individual [participant] receives the ***full amount of the reward***." *Id.*, 33163 (emphasis added). By mandating retroactive reimbursement, the DOL Regulations guarantee fairness and compliance with the principle that "all similarly situated individuals" have an equal opportunity to earn the full reward, regardless of their initial inability to meet the original standard.

24. The notice requirements for outcome-based programs mirror those of activity-only programs: plans must disclose the availability of a reasonable alternative standard (or the possibility of a waiver) in all materials describing the program and in any notification that an

8

individual failed to meet the initial standard. The notice must include contact information and a statement that plans will accommodate the recommendations from participants' personal physicians.

25.     For both activity-only and outcome-based programs, the DOL Regulations require the notice be disclosed "*in all plan materials* describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Further, the regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally *required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents* . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." 78 FR 33158, 33166. Thus, plans that charge their participants more and fail to provide the requisite notice, or retroactive reimbursements for outcome-based programs violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

## II.     DEFENDANT'S VACCINE AND NICOTINE AND VACCINE SURCHARGES VIOLATE ERISA'S ANTI-DISCRIMINATION RULE

26.     Defendant's wellness programs for both non-vaccinated individuals and tobacco users fail to comply with ERISA and its implementing regulations by failing to provide participants with the requisite notice and, specifically with regards to the tobacco surcharge, denying participants the "full reward."

27.     Plaintiffs and all others similarly situated individuals who were not vaccinated against COVID-19 were required to pay an additional premium or contribution based on a "heath status-related factor" — their vaccine status. Similarly, Plaintiffs and all others similarly situated

9

individuals who smoked were required to pay an additional premium or contribution based on a "heath status-related factor" — their use of tobacco. Payment of the vaccine and/or tobacco surcharges were required for Plaintiffs and all others similarly situated to remain insured under Defendant's Plan.

28. Specifically, at all times relevant herein, any employee who did not provide proof of vaccination status by December 15, of the year before the Plan Year were charged $100 each month. Likewise, participants declared to be tobacco users were charged an additional $100 per month. Benefit Guides reveal that the Plan imposed a tobacco surcharge on participants from at least 2018 through 2024 and introduced a COVID-19 surcharge beginning in 2023. These amounts, for Plaintiff Blair, totaled $92.30 each, per pay period ($46.15 for the nicotine surcharge and $46.15 for the vaccine surcharge). Plaintiff Fisher was charged the same amounts.

29. Defendant's wellness program for tobacco users allowed participants who complete a tobacco cessation program to avoid the surcharge, but on a go-forward basis only. As the 2023 Benefits Guide states:

**Tobacco Affidavit**

You must certify in Ceridian/Dayforce whether you or any of your covered dependents are tobacco users. The maximum monthly surcharge any family will receive is $100 for tobacco usage.

**COVID-19 Affidavit**

You must upload, in Ceridian/Dayforce, proof of being fully vaccinated for yourself only. If your submission is approved, you will not incur the $100 monthly surcharge. You can upload proof of vaccination at any time during the year.

***It's important to remember that assessed surcharges that result from not following the instructions listed above will not be reimbursed.***

10

This means participants who get vaccinated against COVID-19 or become tobacco-free partway through the plan year or who complete a smoking cessation program mid-way through the year may be able to avoid future surcharges. However, participants are ineligible for any retroactive reimbursements.

Later in the Benefits Guide, when discussing the tobacco surcharge, the Benefits Guide states:

> If you or any of your dependents use tobacco, you will be subject to a monthly surcharge of $100 in addition to the insurance premium cost for medical coverage. To eliminate this surcharge, you must complete a tobacco cessation journey program through the Aetna website and then notify the GardaWorld Cash Benefits Department of your completion.
>
> The time is now to say goodbye to tobacco. You'd be amazed at how fast your health can improve once you've quit and how much better you can feel after you do. With the right tips and support, you can break the habit. It's easy to find the Tobacco Focus Journey under the "Being Tobacco-Free" section. Select the Tobacco Journey that fits your needs and click to get started

30. The notice of the alternative standard for the vaccine and smoking cessation programs provided in the Benefits Guide is woefully inadequate and fails to meet regulatory requirements. For the vaccine wellness program, there is simply no mention whatsoever of an alternative standard. Rather, the Benefits Guide makes clear that the vaccine surcharge is designed "[t]o offset the rising medical costs due to the COVID-19 pandemic. . . ."

31. For the tobacco wellness program, while the Benefits Guide mentions the existence of a tobacco cessation program, it does not include any specific contact information, such as a phone number or a URL, for participants to access the reasonable alternative standard. Instead, it vaguely directs participants to "complete a tobacco cessation journey program through the Aetna website," leaving them to navigate the website on their own without meaningful guidance. This

11

omission places an undue burden on participants and falls far short of the regulatory requirement to provide clear and direct contact information for obtaining a reasonable alternative standard.

32. Moreover, the Benefits Guide does not include any statement that the Plan will accommodate recommendations from a participant's personal physician, as required by the regulations. Instead, it offers generic and promotional language about the benefits of quitting tobacco, without any assurance that individualized medical advice will be respected or incorporated into the cessation program. Rather, the Benefits Guide simply states: If these affidavits [COVID-19 vaccination and non-smoking] are not completed by December 15th, 2022, you will automatically be subject to the monthly $100 Tobacco Use and $100 monthly COVID-19 Vaccination surcharges. ***There will be no refunds of any surcharges that have been assessed***." The Benefits Guide not only mentions the surcharge but also provides some details about accessing a cessation program to eliminate the surcharge, thereby triggering the disclosure requirement. The omission of key regulatory disclosures—such as contact information and a statement about accommodating physician recommendations—renders the notice inadequate and misleading. Participants are entitled to more than vague instructions and promotional encouragement; they require clear, actionable information to fully exercise their rights under the Plan.

33. Further, the Plan's refusal to issue refunds effectively deprives participants of their ability to receive the "full reward" after satisfying the alternative standard, violating the DOL Regulations and ERISA.

34. For the 2022 plan year, participants were required to provide attestations of no tobacco use by November 15, 2023, to avoid the tobacco surcharge. Similarly, for the 2023 and 2024 plan years, participants had to submit these attestations (tobacco and COVID-19) by December 15 of each respective year. By setting strict cutoffs and not providing adequate notice

12

of alternative standards, the Plan further compounded its non-compliance with applicable laws governing health-contingent wellness programs.

35. Further, as discussed, ERISA requires employers to clearly communicate the availability of a reasonable alternative standard to participants in all plan materials discussing premium differentials, including the plan document and SPD. Defendant failed to adequately notify participants of wellness programs that allow all similarly situated individuals to obtain the "full reward." Instead, participants are led to believe that the surcharge can only be avoided prospectively, which discourages participation and violates ERISA's requirement that "all similarly situated individuals" be clearly informed of their ability to avoid the surcharge for the entire plan year. Moreover, as discussed, there is no statement that recommendations of an individual's personal physician will be accommodated.

36. For the vaccine surcharge, Defendant's failed to notify participants (1) of the availability of an alternative standard they can satisfy to avoid the surcharge, (2) of contact information for obtaining that standard, or (3) that recommendations of an individual's personal physician will be accommodated. These omissions not only undermine participants' ability to make informed decisions about their benefits but also demonstrate a clear failure to meet ERISA's standards for transparency and fairness.

37. Defendant controlled the vaccine and tobacco surcharges, including which participants were charged for which years, and withheld the vaccine and tobacco surcharges from participants' paychecks. By withholding these funds from participants, Defendant dealt with assets of the Plan in its own interests, in violation of ERISA. Because GardaWorld is "self-insured, every dollar spent on medical cost for all employees is paid directly by the company." That means Defendant funds the Plan through contributions from its own general assets. By withholding the

13

unlawful surcharges from participants' paychecks and depositing that money into its own accounts, Defendant not only earned, and continues to earn interest on these ill-gotten funds, but also reduced the amount of money it was required to contribute, from its own assets, to the Plan. This self-dealing enabled Defendant to reduce its funding obligations to the Plan, effectively transferring the financial burden to participants while profiting from the interest accrued on funds unlawfully withheld from participants.

38. In sum, these practices demonstrate that Defendant's wellness programs are unreasonable, revenue-generating schemes disguised as a health initiative, directly contravening ERISA's requirements and purpose.

## CLASS DEFINITION AND ALLEGATIONS

39. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

40. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nicotine Surcharge Class** (the "**Nicotine Class**")
> All individuals residing in the U.S. who paid a nicotine surcharge in connection with their participation in a health or welfare plan offered by GardaWorld.
>
> **Vaccine Surcharge Class** (the "**Vaccine Class**")
> All individuals residing in the U.S. who paid a vaccine surcharge in connection with their participation in a health or welfare plan offered by GardaWorld.

41. Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

14

42.	Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

43.	The proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

44.	**<u>Numerosity</u>**. This action is appropriately suited for a class action. The members of the Classes are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Classes contain hundreds of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

45.	**<u>Commonality</u>**. This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a.	Whether Defendant's vaccine surcharge discriminates against participants based on a health status related factor;

b.	Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

c.	Whether the smoking cessation program offered by Defendant to participants constitutes a reasonable alternative standard by which a participant could receive the "full reward";

d.	Whether Defendant notified participants in all the Plan materials that mention the tobacco surcharge of an alternative standard by which participants could avoid the tobacco surcharge and obtain the "full reward";

e.	Whether Defendant notified participants of the availability of reasonable alternative standard to avoid the vaccine surcharge and whether Defendant provided the required contact information or a statement that participants' personal physicians' recommendations would be accommodated;

f.	Whether Defendant's wellness programs for unvaccinated participants and tobacco users violated ERISA and the applicable regulations;

g.	Whether Defendant breached its fiduciary duties by collecting and retaining the vaccine and tobacco surcharges;

15

h. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness programs to ensure compliance with ERISA and applicable regulations; and

i. The appropriate mechanisms to determine damages on a class-wide basis for the Classes.

46. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

47. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs and members of the Classes each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory nicotine and vaccine surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

48. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court

16

system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

49.     Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Classes. Unless the Classes are certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Classes will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Classes will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY NICOTINE SURCHARGE
### (Violation of 29 U.S.C. § 1182)

50.     Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–49 of this Complaint.

51.     Defendant improperly imposes an unlawful surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $100 monthly on participants (and their dependents) who use tobacco, and by charging some participants more than others based on a health status-related factor, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

52.     29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or

17

contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on tobacco users, without offering a reasonable alternative standard that provides the "full reward" to "all similarly situated individuals," Defendant's wellness program fails to qualify under the safe-harbor exception and constitutes a discriminatory wellness program, discriminating against individuals like Plaintiffs who use nicotine products.

53.    Defendant's imposition of the tobacco surcharge is a violation of ERISA § 702 and the applicable DOL Regulations, including but not limited to 29 C.F.R. § 2590.702(f). Defendant's wellness program for tobacco users fails to provide retroactive reimbursement for the periods prior to and during the time participants are participating in the alternative standard. Participants may be able to avoid the surcharge once completing the program but on a *prospective* basis only. To comply with ERISA and the regulations, the Plan must issue refunds retroactively once the participant completes the program. By failing to provide an avenue for participants like Plaintiffs to obtain the "full reward" of the wellness program, GardaWorld failed to provide a compliant wellness program.

54.    Additionally, the Plan's tobacco wellness program does not provide the proper notice to participants. The Plan fails to provide contact information for obtaining a reasonable alternative standard and fails to provide the requisite statement that recommendations of participants' individual physicians would be accommodated. For failing to adhere to the regulatory notice requirements, Defendant's wellness program violates the DOL Regulations and is discriminatory in violation of ERISA. Further, Defendant failed to include the requisite notice of the wellness program in either the plan document or the SPD in violation of the DOL Regulations.

55. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and members of the Classes may enforce pursuant to 29 U.S.C. § 1132(a)(3).

56. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

<u>COUNT II</u>
### UNLAWFUL IMPOSITION OF DISCRIMINATORY VACCINE SURCHARGE
### (Violation of 29 U.S.C. § 1182)

57. Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–49 of this Complaint.

58. GardaWorld improperly imposes a vaccine surcharge on all participants who fail to show they are fully vaccinated against COVID-19 before a specific date, determined by Defendants, without providing the necessary notices to participants, in violation of ERISA § 702. By imposing discriminatory premiums of up to $100 monthly on participants (and their dependents) who do not get the COVID-19 vaccination, and by charging some participants more than others based on a health status-related factor GardaWorld is violating ERISA § 702(b), 29 U.S.C. § 1182(b).

59. 29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual

19

enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on unvaccinated participants, without providing the proper notice to participants, including failing to notify participants of the availability of a reasonable alternative standard, the contact information for obtaining or accessing the reasonable alternative standard, or a statement that recommendations of participants' individual physicians would be accommodated, Defendant's wellness program violates the DOL Regulations and is discriminatory in violation of ERISA. Further, Defendant failed to include the requisite notice in either the plan document or the SPD in violation of the DOL Regulations.

60. Participants, including Plaintiffs were unable to request a reasonable alternative standard with respect to the vaccine surcharge because the Plan failed to provide the required notice of its availability. Specifically, the Plan materials, including the Benefit Guides, did not adequately disclose the existence of a reasonable alternative standard or the process for obtaining one, as required under federal regulations. Without this critical information, Plaintiffs and similarly situated individuals were deprived of the opportunity to request an alternative standard, effectively barring them from qualifying for the reward and rendering the vaccine surcharge unlawful under applicable ERISA and wellness program regulations.

61. Defendant's imposition of the vaccine surcharge is a violation of ERISA § 702 and the applicable regulations thereunder, including but not limited to 29 C.F.R. § 2590.702(f).

62. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

63. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT III
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

64. Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–49 of this Complaint.

65. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

66. Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco and vaccine surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

67. Each year, Defendant was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its wellness programs, including the decision to administer wellness programs in a manner that violated the DOL Regulations and ERISA, as discussed herein. Each year, Defendant exercised discretionary authority with respect to the administration and implementation of the unlawful wellness programs by imposing surcharges without adequate alternatives, dictated the

21

eligibility criteria and penalties for noncompliance, and imposed rigid cutoff dates by which participants had to submit affidavits of compliance. Defendant controlled and disseminated the Benefit Guides, which failed to notify participants of reasonable alternative standards, and failed to notify them of a point of contact or a phone number or URL, leaving participants to navigate complex systems or websites without guidance; maintained a policy of refusing to refund surcharges that were improperly or unlawfully assessed; did not adequately account for individualized circumstances, such as participants' health conditions or physicians' recommendations; and did not notify participants that their physicians' recommendations would be accommodated with regard to Defendant's wellness programs. These actions reflect Defendant's active role in administering discriminatory wellness programs in violation of ERISA and applicable regulations.

68. Defendant also breached its fiduciary duties by assessing and collecting the unlawful vaccine and tobacco surcharges in violation of ERISA and the applicable regulations. To that extent, Defendant breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Defendant acted disloyally by causing Plaintiffs and members of the Classes to pay nicotine and vaccine surcharges that were unlawful because they were associated with non-compliant wellness programs.

69. As a result of the imposition of the unlawful and discriminatory nicotine and/or vaccine surcharges, GardaWorld enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendants breached their fiduciary duties by prioritizing their financial interests over the interests of Plan participants by deducting from participants' paychecks the amounts of the surcharges without properly administering retroactive refunds for the tobacco surcharge to individuals who completed the wellness program mid-year. By administering the wellness programs in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under either the tobacco or vaccine wellness program, Defendant administered a program that disproportionately benefited

22

itself at the expense of Plan participants. This practice resulted in an unjust enrichment to Defendant at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

70.    Further, by withholding unlawful tobacco and vaccine surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). Defendant is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

71.    By retaining the amounts of the tobacco and vaccine surcharges, Defendant increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, Defendant dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, Defendant improperly benefitted from its own wellness programs at the expense of Plan participants.

72.    Defendants also breached their fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering wellness programs that do not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) to ensure they properly complied with the regulatory

23

requirements regarding the reasonableness of the program, the "full reward" to "all similarly situated individuals," and the necessary notices and disclosures regarding alternative standards (or lack thereof), in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiffs and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with its fiduciary duties under ERISA, they would not have administered non-compliant wellness programs and/or would have reviewed the terms of the Plan and the wellness programs regularly to ensure they complied with ERISA and the implementing regulations.

73. As a direct and proximate result of these fiduciary breaches, members of the Classes lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

74. Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits it acquired through its violations alleged herein

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Classes, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory nicotine and vaccine surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges;

24

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following terms of the Plan that violated ERISA's anti-discrimination provisions and for failing to adequately monitor and review the terms of the wellness programs to ensure they complied with ERISA;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendant charged for the surcharges;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory nicotine and vaccine surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco and/or vaccine surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Classes pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: December 16, 2024                          Respectfully submitted,

**SIRI & GLIMSTAD LLP**


By: /s/ *Dana Smith*

Dana Smith (NC Bar No. 51015)
525 North Tryon Street
Suite 1600, #7433
Charlotte, North Carolina 28202
Tel: (980) 448-1299

Oren Faircloth (*pro hac vice*)
Scott Haskins (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: dsmith@sirillp.com
E: ofaircloth@sirillp.com
E: shaskins@sirillp.com

*Attorneys for Plaintiffs and the Proposed Classes*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December 2024, I electronically filed or caused to be filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Oren Faircloth*
Oren Faircloth