## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **BLAIR ARTIS,** *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | **Case No. 3:24-cv-00837** |
| | § | |
| **v.** | § | |
| | § | |
| **GARDAWORLD CASH SERVICES,** | § | |
| **INC. d/b/a GARDA WORLD CASH,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## <u>ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................. 1

II.    RELEVANT STATUTORY BACKGROUND ...................................... 1

III.   PLAINTIFFS' ALLEGATIONS ........................................................... 3

IV.   PLAINTIFFS' CLAIMS AGAINST THE COMPANY................................ 4

V.    STANDARDS OF REVIEW ................................................................ 5

VI.   LEGAL ARGUMENT AND ANALYSIS.................................................. 7

     A.   Plaintiffs' ERISA § 702 Claims Should Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Cannot Establish That They Have The Article III Standing Necessary To Assert These Claims ................................................................. 7

          1.   *Plaintiffs Lack Standing To Assert Any ERISA § 702 Claims Relating To The COVID-19 Vaccination Wellness Program* ............................. 7

          2.   *Plaintiffs Lack Standing To Assert Any ERISA § 702 Claims Based On The Tobacco-Free Vaccination Wellness Program* ............................. 9

     B.   Plaintiffs' Claims That The Wellness Plans Are Unlawful Because They Did Not Offer Participants The Opportunity To Receive The "Full Reward" Should Be Dismissed Pursuant to Rule 12(b)(6) ........................................... 10

     C.   Any Claim That The COVID-19 Vaccination Wellness Program Did Not Offer A Reasonable Alternative Standard To Receiving The Vaccination Fail As A Matter Of Law .................................................................................. 11

     D.   Plaintiffs' Breach of Fiduciary Duty Claims Should Be Dismissed Pursuant To Rule 12(b)(6) ................................................................................... 12

          1.   *The Company Was Not Acting As A Fiduciary When It Created And Implemented The Wellness Programs* ................................................... 13

          2.   *Plaintiffs' Breach of Fiduciary Duty Claims Fail For The Separate Reason That Plaintiffs Have Not Alleged That The Company's Actions Resulted In Any Loss To The Plan* ....................................................... 15

VII.  CONCLUSION.................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................6

*Baehr v. Creig Northrop Team, P.C.*,
    953 F.3d 244 (4th Cir. 2020) ...............................................................................7

*Barnett v. Perry*,
    2011 WL 5825987, at 5* (D.Md. Nov. 16, 2011) ...............................................15

*Berry v. Wells Fargo & Co.*,
    No. CV 3:17-304-JFA, 2017 WL 7411165 (D.S.C. July 31, 2017) ......................8

*Bowser v. Gabrys*,
    No. 3:23-CV-00910-KDB-SCR, 2024 WL 3894056 (W.D.N.C. Aug. 21,
    2024) ..................................................................................................................6

*Clark v. BASF Corp.*,
    142 F. App'x 659 (4th Cir. 2005).........................................................................6

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*
    931 F.3d 269, 276 (4th Cir. 2019) .......................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000)............................................................................................7

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ...............................................................................6

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) ...............................................................................6

*Holland v. Consol Energy, Inc.*,
    781 F. App'x 209 (4th Cir. 2019)........................................................................7

*Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*,
    892 F.3d 613, 620 (4th Cir. 2018). .....................................................................5

*Jackson v. New England Biolabs, Inc.*,
    No. CV 23-12208-RGS, 2024 WL 1436048 (D. Mass. Apr. 3, 2024) ....................8

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)............................................................................................13

*Massachusetts Mut. Life Ins. Co. v. Russell,*
  473 U.S. 134, 140-44 (1985) .........................................................................................15

*Moon v. BWX Techs., Inc.,*
  577 F. App'x 224, 231 (4th Cir. 2014). .......................................................................14

*Pegram v. Herdich,*
  530 U.S. 211 (2020).......................................................................................................13

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States,*
  945 F.2d 765, 768 (4th Cir. 1991) .................................................................................5

*Rogers v. Unitedhealth Grp. Inc.,*
  144 F. Supp. 3d 792, 800 (D.S.C. 2015).....................................................................12

*Roland v. Jefferson Pilot Fin. Ins. Co.,*
  No. 1:07CV982, 2008 WL 11483555, at *4 (M.D.N.C. Apr. 16, 2008) .....................15

*Secretary of Labor v. Macy's, Inc.,*
  Case No. 1:17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ................13, 14

*Smith v. Sydnor*
  184 F.3d 356, 363 (4th Cir. 1999) ...............................................................................12

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016).....................................................................................................7, 8

*Taylor v. Oak Forest Health & Rehab., LLC,*
  2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013)....................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007).........................................................................................................6

*Thole v. U.S Bank N.A.,*
  590 U.S. 538 (2020).........................................................................................................7

**Statutes**

29 C.F.R. § 2590.702(f)(1)(iv)...............................................................................................3

29 C.F.R. § 2590.702(f)(1)(v)................................................................................................2

29 C.F.R. § 2590.702(f)(3)(iv)(A).......................................................................................3, 8

29 C.F.R. § 2590.702(f)(3)(iv)(B) .........................................................................................3

29 C.F.R. § 2590.702(f)(iv) ...................................................................................................2

29 C.F.R. § 2590.702(f)(4)(iv)..............................................................................................10

iii

78 FR 33158 .................................................................................................................. 2

78 FR 33182 .............................................................................................................. 2, 10

78 FR 33183 ................................................................................................................ 10

29 U.S.C. § 1132(g) ..................................................................................................... 16

29 U.S.C. § 1182(b)(1) ................................................................................................... 1

29 U.S.C. § 1182(b)(2) ................................................................................................... 1

29 U.S.C. § 1182(b)(2)(B) ............................................................................................ 11

29 U.S.C. § 1185d ......................................................................................................... 2

42 U.S.C. § 300gg-4 ...................................................................................................... 2

42 U.S.C. § 300gg-4(j)(3)(D)(i) ................................................................................. 2, 9

42 U.S.C. § 300gg-4(j)(3)(E) .......................................................................................... 2

ERISA § 502(g) ........................................................................................................... 16

ERISA § 702 ........................................................................................................ *passim*

ERISA § 702(b) ........................................................................................... 1, 2, 4, 5, 11

ERISA § 715 ............................................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 5, 7, 10

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 5, 6, 10, 12, 14, 15

PHSA § 2705 ............................................................................................................... 1, 2

**Other Authorities**

FAQs About Affordable Care Act Implementation Part 50, Health Ins. Portability
and Accountability Act and Coronavirus Aid, Relief, and Econ. Sec. Act
Implementation, Emp. Benefits Sec. Admin. U.S. Dep't. of Lab. Oct. 4, 2021),
https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-
activities/resource-center/faqs/aca-part-50.pdf ........................................................ 3

# I.  INTRODUCTION

This case involves two wellness programs associated with the ERISA-governed Health and Welfare Benefit Plan (the "Plan") offered by GardaWorld Cash Services, Inc. ("Defendant" or the "Company"): (1) a COVID-19 vaccination wellness program; and (2) a tobacco-free wellness program. The goals of these wellness programs are to incentivize participants to be tobacco-free and to receive a COVID-19 vaccination.  Such goals have been recognized by the government as important to the promotion of health and prevention of disease.[1]  Plan participants who adhere to the wellness programs receive rewards (in the form of avoidance of a premium surcharge).

Plaintiffs claim that Defendant violated ERISA when it created and implemented these two wellness programs because the programs did not provide Plaintiffs with a  "reward" for failing to obtain a COVID-19 vaccination and/or for their continued use of dangerous tobacco products. Plaintiffs are wrong as a matter of law and their claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

# II.  RELEVANT STATUTORY BACKGROUND

ERISA § 702(b) allows a plan to charge a participant an insurance premium based on a health status-related factor if that participant fails to adhere to a program "of health promotion and disease prevention."  29 U.S.C. § 1182(b)(1)-(2).  Section 2705 of the Public Heath Safety Act ("PHSA"), which is incorporated into ERISA pursuant to ERISA § 715, addresses the employer-

---

[1]      By way of example only, the Center for Disease Control has recognized that smoking is "a major public health concern" and stated that it is "the leading cause of preventable disease, death, and disability in the United States." *See* https://www.cdc.gov/tobacco/about/index.html (citing to the U.S. Department of Health and Human Services' Report of the Surgeon General, "The Health Consequences of Smoking—50 Years of Progress."  The Center for Disease Control has also stated that "COVID 19-vaccines are effective at protecting people from getting seriously ill, being hospitalized, and dying."  https://www.cdc.gov/covid/vaccines/benefits.html (last visited Dec. 30, 2024).

1

based wellness programs referenced in ERISA § 702(b).  *See* ERISA § 715, 29 U.S.C. § 1185d, and PHSA § 2705, codified at 42 U.S.C. 300gg-4.

ERISA § 702 and PHSA § 2705 require that a wellness program provide "a reasonable alternative standard … for obtaining the reward for any individual for whom, for that period," (1) "***it is unreasonably difficult due to a medical condition*** to satisfy the otherwise applicable standard;" and/or (2) "***it is medically inadvisable*** to attempt to satisfy the otherwise applicable standard." 42 U.S.C. § 300gg-4(j)(3)(D)(i) (emphasis added).  The reasonable alternative standard must be disclosed in the plan materials describing the terms of the wellness program.  42 U.S.C. § 300gg-4(j)(3)(E).

The Department of Labor ("DOL"), the Department of Treasury, and the Department of Health & Human Services have jointly issued regulations regarding incentives for nondiscriminatory wellness programs from time to time, most recently in 2013.  *See* 78 FR 33158 (June 2, 2013).  The DOL promulgated its regulation on ERISA wellness programs at 29 C.F.R. § 2590.702 (the "DOL Regulation").  Among other things, the DOL Regulation acknowledges that there are different requirements for wellness programs depending on whether the programs are outcome or activity based. *See* 29 C.F.R. § 2590.702(f)(iv)-(v), 78 FR 33182.

An outcome-based wellness program is "a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking…) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v). For participants who "do not attain or maintain the specific health outcome, compliance with an educational program [such as a smoking cessation program] or an activity may be offered as an alternative to achieve the same reward." 29 C.F.R. § 2590.702(f)(1)(v).  In the context of a tobacco-free wellness program, the "reward" may include the avoidance of a surcharge for tobacco use.

2

An activity-only wellness program is "a type of health-contingent wellness program that requires an individual to perform or complete an activity related to a health factor in order to obtain a reward [such as being vaccinated for COVID-19] but does not require the individual to attain or maintain a specific health outcome [such as not contracting COVID-19]." 29 C.F.R. § 2590.702(f)(1)(iv).[2]  An activity-based wellness program only requires that a reasonable alternative standard be offered to participants when it would be medically inadvisable or unreasonably difficult due to a medical condition for them to comply with the expected standard. *See* 29 C.F.R. § 2590.702(f)(3)(iv)(A).  A company is not required to determine a particular reasonable standard in advance of an individual's request for one. *See* 29 C.F.R. § 2590.702(f)(3)(iv)(B).

## III.    PLAINTIFFS' ALLEGATIONS

The Company offers eligible individuals the opportunity to participate in the Plan.  (Am. Compl. [ECF No. 16] at ¶¶ 10-11, 14).  As disclosed in the Benefits Enrollment Guidebook ("Benefits Guidebook"), Plan participants who use tobacco are charged an insurance premium if they fail "to complete a tobacco cessation journey program." (*Id.* at ¶ 29).  The 2023 Benefit Guidebook also informs Plan participants that they will be charged an additional insurance premium if they fail to obtain a COVID-19 vaccination.  (*Id.*).

Plaintiffs were eligible to participate in the Plan and elected to participate in the Plan.  (*Id.* at ¶¶ 10-11, 27).  Plaintiffs both use tobacco products. (*Id.* at ¶ 27).  Under the terms of the Plan,

---

[2]    Joint guidance issued in 2021 by the DOL, the Department of the Treasury, and the Department of Health & Human Services (the "Wellness FAQs") treats a COVID-19 vaccine wellness program as an "activity-only" wellness program.  *See* FAQs About Affordable Care Act Implementation Part 50, Health Ins. Portability and Accountability Act and Coronavirus Aid, Relief, and Econ. Sec. Act Implementation, Emp. Benefits Sec. Admin. U.S. Dep't. of Labor (Oct. 4, 2021), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-50.pdf.

Plaintiffs were required to pay an additional insurance premium if they continued using tobacco products (the "Tobacco Surcharge") and elected not to participate in the free tobacco cessation program offered. (*Id.* at ¶¶ 10-11, 27-29). Plaintiffs do not allege that it would have been "unreasonably difficult due to a medical condition" or "medically inadvisable" for them to cease using tobacco products. Additionally, neither Plaintiff alleged that they are tobacco-free or that they ever enrolled in (much less completed) the free smoking cessation program offered as part of the tobacco-free wellness program.

Plaintiffs were also required to pay an additional insurance premium due to their failure to obtain a COVID-19 vaccination (the "Vaccine Surcharge"). (*Id.* at ¶¶ 10-11). Plaintiffs do not allege that it would have been "unreasonably difficult due to a medical condition" or "medically inadvisable" for them to receive a COVID-19 vaccination. Plaintiff also do not allege that they submitted documentation of a need for a medical or religious accommodation from the expected standard of obtaining the COVID-19 vaccination.

## IV.    PLAINTIFFS' CLAIMS AGAINST THE COMPANY

Plaintiffs claim that the Company unlawfully imposed the Vaccine Surcharge on them in violation of ERISA § 702(b). More specifically, Plaintiffs allege that the Company's COVID-19 vaccine wellness program did not comply with ERISA § 702(b) because it: (1) failed to "adequately disclose the existence of a reasonable alternative standard or the process for obtaining one"; (2) failed to disclose "that recommendations of participants' individual physician[s] would be accommodated"; and (3) failed to offer any retroactive reimbursements of the Vaccine Surcharge once a participant received the COVID-19 vaccination, thus denying participants the ability to obtain the "full reward" for adhering to the wellness program. (Am. Compl. at ¶¶ 29-30, 36, 58-61).

4

Plaintiffs also claim that the Company unlawfully imposed the Tobacco Surcharge on them in violation of ERISA § 702(b) because the Company's tobacco-free wellness program allegedly: (1) failed to provide proper "notice of a reasonable alternative standard" to being tobacco-free, including the contact information for obtaining a reasonable alternative standard, in all plan materials describing the terms of the wellness program; (2) failed to disclose "that recommendations of participants' individual physicians would be accommodated"; and (3) did not offer reimbursement of the Tobacco Surcharges paid by participants *prior* to their completion of the smoking cessation program, which allegedly denied participants the opportunity to receive the "full reward" for adhering to the wellness program. (*Id.* at ¶¶ 32-35, 51-56).

Finally, Plaintiffs claim that the Company was a Plan fiduciary and breached its fiduciary duties by implementing the wellness programs and assessing and collecting the Vaccine and Tobacco Surcharges. (*Id*. at ¶¶ 65-74).

Plaintiffs' claims are subject to dismissal under Rules 12(b)(1) and/or 12(b)(6).

## V.      STANDARDS OF REVIEW

### A.      Rule 12(b)(1) Motions

Motions to dismiss under Rule 12(b)(1) challenge the court's jurisdiction over the subject matter of the complaint. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "[T]he burden of proving subject matter jurisdiction is on the plaintiff." *Id.* Where, as is the case here, the challenge to subject-matter jurisdiction is a facial challenge, the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., 892 F.3d 613, 620 (4th Cir. 2018).

**B.  Rule 12(b)(6) Motions**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility requires the plaintiff to plead sufficient facts and law to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  When evaluating a motion to dismiss, courts "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

When analyzing a Rule 12(b)(6) motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  In particular, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Bowser v. Gabrys*, No. 3:23-CV-00910-KDB-SCR, 2024 WL 3894056, at *1 (W.D.N.C. Aug. 21, 2024). Relevant to the instant motion, the Court may consider the Plan document, the Benefit Guidebooks, and the COVID-19 and Tobacco Affidavits because all of these documents are referenced and relied on by Plaintiffs in the Amended Complaint. *See Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005) (holding that a court may properly consider ERISA plan documents on a motion to dismiss); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016) (holding that a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").

6

## VI. LEGAL ARGUMENT AND ANALYSIS[3]

### A. Plaintiffs' ERISA § 702 Claims Should Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Cannot Establish That They Have The Article III Standing Necessary To Assert These Claims

A plaintiff suing for an alleged violation of ERISA has the burden of establishing his or her individual standing. *See Thole v. U.S Bank N.A.,* 590 U.S. 538, 543-544 (2020). To satisfy Article III's standing requirements, a plaintiff must show, among other things, that he or she has suffered an "injury-in-fact" that is "fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000).

Article III standing requires a concrete injury even in the context of a statutory violation. *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 256 (4th Cir. 2020) (holding no Article III standing where there is "a statutory violation divorced from any real world effect"); *see also Holland v. Consol Energy, Inc.*, 781 F. App'x 209, 214 (4th Cir. 2019) ("Without any concrete harm or risk of real harm, the plaintiffs have alleged only a bare statutory violation that can't satisfy Article III requirements."). Thus, a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016).

#### 1. *Plaintiffs Lack Standing To Assert Any ERISA § 702 Claims Relating To The COVID-19 Vaccination Wellness Program*

An activity-only wellness program, including the COVID-19 vaccination wellness program at issue here, requires that a reasonable alternative standard be offered to participants ***only***

---

[3] Many of the Plan participants, including one or more Plaintiffs, have entered individual agreements to arbitrate ERISA and other claims against the Company. By filing this Motion to Dismiss, Defendant does not waive, and expressly reserves it right, to enforce the agreements to arbitrate against any Plan participant.

when it would be (1) unreasonably difficult due to a medical condition to comply with the standard; or (2) medically inadvisable to do so. *See* 29 C.F.R. § 2590.702(f)(3)(iv)(A).

Plaintiffs have not pled the facts necessary to show that they were entitled to be offered a reasonable alternative to obtaining the COVID-19 vaccination. The Amended Complaint does not allege that it would have been unreasonably difficult for Plaintiffs to receive a COVID-19 vaccination, whether due to a medical condition or medical inadvisability. As a result, Plaintiffs could not have suffered a concrete injury-in-fact arising from Defendant's alleged failure to provide Plaintiffs with notice (1) of a reasonable alternative to obtaining the COVID-19 vaccination, (2) of the contact information for obtaining information on the alternative standard, or (3) that recommendations of an individual's personal physician will be accommodated. Accordingly, these claims should be dismissed due to Plaintiffs' lack of Article III standing. *See, e.g.*, *Spokeo*, 578 U.S. at 342 (finding that a plaintiff must show more than simply a violation of a statutory right to establish an injury-in-fact); *see also Berry v. Wells Fargo & Co*., No. CV 3:17-304-JFA, 2017 WL 7411165, at *7–8 (D.S.C. July 31, 2017) (holding that a plaintiff lacked standing to assert claim based on defendant's failure to disclose information required under ERISA where the plaintiff failed to allege how he suffered an injury by being denied the information); *Jackson v. New England Biolabs, Inc*., No. CV 23-12208-RGS, 2024 WL 1436048, at *2 (D. Mass. Apr. 3, 2024) (holding that plaintiffs lacked standing to challenge the loss of a put option under the plan where plaintiffs had no right to exercise the put option).

Plaintiffs' claim that the vaccination wellness program violated ERISA § 702 because it did not provide them with the "full reward" (*i.e.*, reimbursement of the Vaccine Surcharge) once they obtained the COVID-19 vaccination fares no better because there is no allegation that Plaintiffs ever received the vaccination. Because Plaintiffs never obtained the COVID-19

8

vaccination, Plaintiffs could not have suffered the requisite injury-in-fact as a result of the program's alleged failure to offer them the "full reward" after receiving the vaccination. Accordingly, their claims should be dismissed pursuant to Rule 12(b)(1) due to a lack of standing.

## 2. *Plaintiffs Lack Standing To Assert Any ERISA § 702 Claims Based On The Tobacco-Free Vaccination Wellness Program*

A tobacco-free wellness program is required to provide "a reasonable alternative standard … for obtaining the reward [here, avoidance of the Tobacco Surcharge] for any individual for whom, for that period," (1) ***it is unreasonably difficult due to a medical condition*** to satisfy the otherwise applicable standard;" and (2) "***it is medically inadvisable*** to attempt to satisfy the otherwise applicable standard." 42 U.S.C. § 300gg-4(j)(3)(D)(i) (emphasis added).

Here, Plaintiffs do not allege that being tobacco-free would have been "medically inadvisable" or "unreasonably difficult" for them to do because of a "medical condition," such as nicotine addiction. Absent such allegations, Plaintiffs were not excused from the expected standard of being tobacco-free. Because Plaintiffs had not alleged any facts showing that they were eligible to be excused from the standard of being tobacco-free, any allegedly deficient notice of the reasonable alternative standard that was provided to eligible participants would not have caused an injury. Said differently, Plaintiffs do not allege any basis to be excused, so they could not have been damaged by the alleged difficulty in the process to request the exemption. The lack of a concrete injury-in-fact precludes Plaintiffs from having the standing necessary to assert any claims based on the notice of the alternative standard to being tobacco-free (*i.e.*, completion of a free tobacco cessation program).

Plaintiffs also do not allege that they quit using tobacco products at any point in the Plan year. Such an allegation is necessary in order to establish an injury-in-fact arising from the alleged failure to provide participants with the "full reward" (*i.e.*, reimbursement of the Tobacco

9

Surcharges paid prior to the participant's compliance with the program's expected standard or reasonable alternative standard). The lack of an injury-in-fact caused by the reimbursement policy means that Plaintiffs do not have the requisite Article III standing to assert these claims. As such, these claims should be dismissed pursuant to Rule 12(b)(1).

**B. Plaintiffs' Claims That The Wellness Plans Are Unlawful Because They Did Not Offer Participants The Opportunity To Receive The "Full Reward" Should Be Dismissed Pursuant to Rule 12(b)(6)**

Even if Plaintiffs had standing to assert claims relating to the alleged failure to provide participants with the "full reward" (and they do not), these claims are still subject to dismissal under Rule 12(b)(6) because ERISA does not require reimbursement of surcharges paid *prior* to the participant's completion of the expected standard or the reasonable alternative standard.

Plaintiffs' "full reward" claims are based on their misunderstanding of the DOL Regulation's statement that a wellness program must make "the full reward" available to all similarly situated individuals. *See* 29 C.F.R. § 2590.702(f)(4)(iv), 78 FR 33183. According to Plaintiffs, a participant is entitled to a retroactive refund of the Vaccine and/or Tobacco Surcharge for the full Plan year, regardless of what time of year the participant actually starts adhering to the wellness program. Plaintiffs' construction of the phrase "full reward" is incorrect for at least three reasons.

First, the DOL Regulation makes clear that activity-only and outcome-based wellness programs must only "give individuals eligible for the program the opportunity to qualify for the reward under the program" ***once per year***. *See* 29 C.F.R. § 2590.702(f)(3)(i), 78 FR 33182 (discussing the frequency of the opportunity to qualify for activity-only wellness programs); 29 C.F.R. § 2590.702(f)(4)(i), 78 FR 33183 (discussing the frequency of the opportunity to qualify for outcome-based wellness programs).

Second, after the DOL Regulation was released, the DOL confirmed that where, as is the case here, a participant is provided with a reasonable opportunity to enroll in a wellness program "at the beginning of the plan year and qualify for the reward" – but declines the opportunity to do so – the plan is not required "to provide the opportunity to avoid the surcharge or provide another reward to the individual for that plan year." *See* FAQs About Affordable Care Act Implementation (Part XVIII) & Mental Health Parity Implementation (Jan. 9, 2014), at 6 (available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/affordable-care-act-implementation-faqs-part-xviii-mental-health-parity.pdf).

And third, Plaintiffs' construction of the phrase "full reward" conflicts with the plain language of ERISA § 702. ERISA § 702(b) expressly requires that rewards be granted "for **adherence** to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B) (emphasis added). By definition, a participant is only "adhering" to a wellness program if he is **participating** in that program. Plaintiffs' construction of the DOL Regulation to allow for reimbursement of surcharges paid **prior** to any adherence to a program of health promotion and disease prevention deviates substantially from the requirements of ERISA § 702(b). Given that ERISA does not require that a participant be reimbursed for surcharges paid prior to a participant's adherence to a program of health promotion and disease prevention, Plaintiffs' claim that Defendant's decision not to provide retroactive reimbursements of the Surcharges violates ERISA fails as a matter of law.

### C. Any Claim That The COVID-19 Vaccination Wellness Program Did Not Offer A Reasonable Alternative Standard To Receiving The Vaccination Fails As A Matter Of Law

The Amended Complaint alleges that Plaintiffs were required to pay an additional premium because they were not vaccinated against COVID-19. To the extent that Plaintiffs are asserting

that the COVID-19 vaccination wellness program did not provide eligible participants with a reasonable alternative to obtaining the vaccination, this is incorrect.

The COVID-19 vaccination affidavit referenced in paragraphs of 29 and 34 of the Amended Complaint notifies employees-participants that, in order for the Vaccine Surcharge to be waived, "employees must certify that they are vaccinated or document the need for an accommodation." *See* Ex. 1, Decl. of Corporate Representative at ¶ 5 and Ex. B thereto, COVID-19 Affidavit. The accommodations offered included religious and medical accommodations.

Plan participants in need of a medical accommodation were required to complete the Employee Request and Medical Provider for COVID-19 Vaccination Surcharge Exemption form (the "Medical Exemption Form"). The Medical Exemption Form required that participants who were seeking an exemption from the COVID-19 vaccination and the Vaccine Surcharge to: (1) attest that the information provided in support of their request for a medical exemption is accurate; (2) obtain a statement from their medical provider that described the "medical condition for which the employee listed above should be excepted from receiving the COVID-19 vaccination"; and (3) provide the completed Medical Exemption Form to the Company's Human Resources Department. *See id.* at Ex. C, Medical Exemption Form. Given that Plan participants were offered a reasonable alternative standard to obtaining the COVID-10 vaccination, any claim that Defendant did not do so in violation of ERISA fails as a matter of law.

### D. Plaintiffs' Breach of Fiduciary Duty Claims Should Be Dismissed Pursuant To Rule 12(b)(6)

To state a viable claim for breach of fiduciary duty against the Company, Plaintiffs must allege facts sufficient to allow the Court to draw the reasonable inference that (1) the Company was a Plan fiduciary; (2) the Company breached its fiduciary duties; and (3) the Company's breach of its fiduciary duties resulted in losses to the Plan. *See, e.g.*, 29 U.S.C. § 1109; *Smith v. Sydnor*,

184 F.3d 356, 363 (4th Cir. 1999); *Rogers v. Unitedhealth Grp., Inc.*, 144 F. Supp. 3d 792, 800 (D.S.C. 2015). Plaintiffs have failed to allege the facts necessary to support their breach of fiduciary duty claims. As such, these claims should be dismissed pursuant to Rule 12(b)(6).

**1.    *The Company Was Not Acting As A Fiduciary When It Created And Implemented The Wellness Programs***

As the Supreme Court has explained, "[i]n every case charging breach of ERISA fiduciary duty…the threshold question is…whether [the defendant] was acting as a fiduciary…when taking the action subject to complaint." *Pegram v. Herdich*, 530 U.S. 211, 226 (2020). When an employer alters the terms of a plan, it is not acting as a fiduciary; rather, the employer is acting as a settler. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

In this case, the Company was acting as a settler when it created the tobacco-free and COVID-19 vaccine wellness programs. *See id.*; *see also Secretary of Labor v. Macy's, Inc.*, Case No. 1:17-cv-541, 2021 WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021) (holding that the company was not acting as a fiduciary when it made the "decision to charge a Tobacco Surcharge for individuals who neither refrained from using tobacco products nor completed a reasonable alternative").

Despite the well-established law providing that an employer does not act as a fiduciary when it creates a plan, Plaintiffs argue that the Company was a fiduciary because it "exercised discretionary authority and discretionary responsibility in the administration of the Plan." (Am. Compl. at ¶ 67). This is a distinction without a difference where, as is the case here, the only allegation is that the allegedly discriminatory wellness plans were implemented as created. *See Macy's*, 2021 WL 5359769, at *18.

The United States District Court for the Southern District of Ohio was confronted with a case involving nearly identical allegations as those asserted here and found that those allegations

13

failed to state a viable claim for breach of fiduciary against the employer. *See id.* at \*18-19. In support of its decision, the Court held that:

> the distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the Secretary alleges only that a discriminatory wellness program was implemented as created…the Secretary's only apparent allegation about implementation is that Macy's implemented a discriminatory wellness program *in accordance with* the impermissibly discriminatory terms it established when it created the program. This is not enough to make Macy's a fiduciary rather than a settlor with respect to the conduct of which the Secretary complains.

*Id.*

The allegation that the Company "breached its fiduciary duties by assessing and collecting the [allegedly] unlawful vaccine and tobacco surcharges in violation of ERISA" fares no better as the assessment and collection of surcharges is not a fiduciary function; instead, it is a ministerial function. *See* 29 C.F.R. § 2509.75-8 (Question D-2) (identifying the "[c]ollection of contributions and application of contributions as provided in the plan" as a mistrial function and explaining that a person who performs purely mistrial functions is not a fiduciary"); *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 276 (4th Cir. 2019) (recognizing that, under the DOL's Bulletin, a person "collecting 'contributions ... as provided in the plan,' is not acting in a fiduciary capacity) (citing 29 C.F.R. § 2509.75-8 at D-2); *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 231 (4th Cir. 2014) (holding that acceptance of premium payments was not a fiduciary function).

Plaintiffs have failed to allege the facts necessary to support an inference that the Company was acting as a fiduciary when it implemented the tobacco-free and vaccine wellness programs that it created. Accordingly, Plaintiffs' breach of fiduciary duty claims should be dismissed pursuant to Rule 12(b)(6). *See id.* at \*19 (dismissing the Secretary's breach of fiduciary duty claims against the employer pursuant to Rule 12(b)(6) due to the lack of factual allegations supporting a claim that the employer was acting as a fiduciary when it implemented its tobacco

wellness program in accordance with its terms); *see also Sec'y of Labor v. Macy's, Inc*., 2022 WL 407238, at *6 (S.D. Ohio Feb. 10, 2022) (denying motion for reconsideration and noting that trustees do not breach fiduciary duties "simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions") (citation omitted).

### 2. *Plaintiffs' Breach of Fiduciary Duty Claims Fail For The Separate Reason That Plaintiffs Have Not Alleged That The Company's Actions Resulted In Any Loss To The Plan*

Plaintiffs allege that "[a]s a direct and proximate result of [the Company's] fiduciary breaches, members of the Classes lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks." (Am. Compl. at ¶ 73). An allegation of individual (as opposed to Plan) harm is insufficient to state a claim for breach of fiduciary duty. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–44 (1985) (explaining that, under ERISA, damages for breach of fiduciary duty must inure to the benefit of the plan as a whole rather than to individuals); *Taylor v. Oak Forest Health & Rehab., LLC*, 2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013) ("A plaintiff cannot sue for individual damages under § 1109 or § 1132(a)(2) because the plain language of these provisions indicate that they only allow recovery for losses to the plan itself and do not provide a means of relief for individual beneficiaries."); *Barnett v. Perry*, 2011 WL 5825987, at *5 (D.Md. Nov. 16, 2011) (finding that plaintiffs failed to state a proper breach of fiduciary duty claim under Section 1109, as evidenced by the "remedies [sought]—retroactive reinstatement to the Plan and reimbursement for their costs—[remedies that] would benefit only the [plaintiffs], not the Plan's beneficiaries as a whole").

Because Plaintiffs have not alleged any losses to the Plan as a whole, Plaintiffs' breach of fiduciary duty claim should be dismissed pursuant to Rule 12(b)(6). *See id.*; *see also Roland v. Jefferson Pilot Fin. Ins. Co.*, No. 1:07CV982, 2008 WL 11483555, at *4 (M.D.N.C. Apr. 16, 2008) (holding that "Plaintiff has not alleged that Defendants' conduct of denying him disability benefits

resulted in any redressable loss to the plan as a whole, and he therefore fails to state a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2)").

## VII.    CONCLUSION

For these reasons, Defendant respectfully request that all of the claims asserted in Plaintiffs' First Amended Complaint be dismissed and Defendant be awarded its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Respectfully submitted, this 30th day of December, 2024.


**HOLLAND & KNIGHT LLP**

By:*/s/ Lindsey R. Camp*
Lindsey R. Camp (*pro hac vice*)
Florida Bar No. 84138
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, Florida 33401
Telephone: (404) 817-8439
Facsimile: (561) 650-8399
Email: lindsey.camp@hklaw.com

Nishma Patel
N.C. Bar No. 50922
1120 S. Tryon Street, Suite 900
Charlotte, North Carolina 28203
Phone: 980.215.7797
Fax: 980.215.7771
nishma.patel@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY certify that on December 30, 2024, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Lindsey R. Camp*
Lindsey R. Camp

## CERTIFICATE OF WORD COUNT

I, Lindsey R. Camp, certify that the foregoing Memorandum complies with the word count limits set forth in Local Rule 7.1(d).

*/s/ Lindsey R. Camp*
Lindsey R. Camp